UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BARBARA RUSSO,                                          **DOCKET NO.:**

                            *Plaintiff,*

          -against-

TUTTNAUER USA COMPANY LIMITED,                          **COMPLAINT**
BOB BASILE (in his individual and official capacity)
and KEVIN CONNORS (in his individual and official
capacity),                                              ***JURY TRIAL DEMANDED***

                            *Defendants.*
------------------------------------------------------------------X

PLAINTIFF, **BARBARA RUSSO** by and through her attorneys, the LAW OFFICES OF

FREDERICK K. BREWINGTON, as and for her Complaint, against the DEFENDANTS,

**TUTTNAUER USA COMPANY LIMITED**, **BOB BASILE** (herein "DEFENDANT BASILE"

or "BASILE)(in his individual and official capacity) and **KEVIN CONNORS**    (herein

"DEFENDANT CONNORS" or "CONNORS")(in his individual and official capacity), hereinafter

collectively "**DEFENDANTS**",  states and alleges as follows:

## PRELIMINARY STATEMENT

1.       This is a civil action seeking monetary relief (including past and on going economic

loss), declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for

violations of the PLAINTIFF's rights, brought pursuant to the Fourteenth Amendment of the

Constitution of the United States of America, Title VII of the Civil Rights Act of 1964, 42 U.S.C.

section 2000e *et seq.* (as amended), and New York State's Human Rights Law, Executive Law

section 296, on the basis of PLAINTIFF's gender, as PLAINTIFF was subjected to a hostile work

environment, sexual harassment, retaliation for opposing discrimination based on sex, gender, race,

color, and religion; as well as wrongful termination.

2.      Specifically, the PLAINTIFF alleges that the collective DEFENDANTS negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully deprive PLAINTIFF of her employment, position, title, and pay through discrimination, retaliation, misrepresentation, misinformation, harassment, and character assassination, and upon doing so wreaked substantial distress upon the PLAINTIFF.

3.      Said acts were done knowingly with the consent and condonation of TUTTNAUER USA COMPANY LIMITED (herein "TUTTNAUER USA"), BOB BASILE (herein "DEFENDANT BASILE") and KEVIN CONNORS (herein "DEFENDANT CONNORS") with the express purpose of removing and silencing the PLAINTIFF, and generally violating her rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. section 1331 and 1343.

5.      This court is requested to exercise pendant jurisdiction with respect to PLAINTIFF's State law claims pursuant to 28 U.S.C. section 1367.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. section 1391, based on the fact that PLAINTIFF's residence is in Suffolk County New York, DEFENDANTS BASILE and CONNORS reside in the State of New York and DEFENDANT TUTTNAUER USA, is a Corporation conducting business in the State of New York, within the various counties of New York, including, but not limited to Nassau and Suffolk. DEFENDANT TUTTNAUER USA has offices in Hauppauge, Suffolk County, New York.

7.      Prior hereto, on June 11, 2018, PLAINTIFF filed Charge of Discrimination 1019585, against Defendants TUTTNAUER USA, TUTTNAUER ISRAEL, FORTISSIMO CAPITAL, KEVIN CONNORS and BOB BASILE, with the New York State Division of Human Rights (hereinafter "NYSDHR") under case number 1019585 alleging unlawful discriminatory practice relating to employment because of gender, sex, race/color, national origin, religion, sexual harassment, hostile work environment and opposed discrimination/retaliation for DEFENDANTS' wrongful acts based on gender, sex, and religious discrimination in employment. PLAINTIFF also cross filed a charge with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16GB804205.

8.      On January 5, 2021, PLAINTIFF received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16GB804205 (copy annexed hereto Exhibit A). As of the filing date of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed. In addition, the Plaintiff sought and was granted an Administrative Convenience Dismissal from the NYSDHR with regard to case number 1019585 on December 7, 2019 with a Notice and Final Order issued on January 23, 2020.

9.      Each of the DEFENDANTS at all times relevant to this action had the power and the duty to restrain the other DEFENDANTS and prevent them from violating the law and the rights of the PLAINTIFF but each of the DEFENDANTS failed and refused to perform that duty, failed and refused to restrain the other DEFENDANTS and thereby became a party to the unnecessary subjection of harm and denial of basic rights of the PLAINTIFF.

## PARTIES

10.     PLAINTIFF, BARBARA RUSSO, at all times relevant in this Complaint, was an employee of DEFENDANT TUTTNAUER USA and is a citizen of the United States of America. PLAINTIFF resides in the County of Suffolk, State of New York.

11.     During all times relevant in this Complaint, DEFENDANT, TUTTNAUER USA, COMPANY LIMITED, (hereinafter "TUTTNAUER") is a duly constituted Corporation of the State of New York, doing business in the State of New York, is the employer of more than forty (40) employees, and employed PLAINTIFF for twenty-six (26) years.  TUTTNAUER USA, is located at 25 Power Drive, Hauppauge, Suffolk County, New York and conducts business in the State of New York.

12.     During all times relevant in this Complaint, DEFENDANT, BOB BASILE was, and continues to be, employed as a Senior Vice President by DEFENDANT TUTTNAUER USA, COMPANY LIMITED, and works from the corporate USA headquarters located at 25 Power Drive, Hauppauge, Suffolk County, New York. BASILE is a policy and decision maker for the DEFENDANT TUTTNAUER.

13.     During all times relevant in this Complaint, DEFENDANT, KEVIN CONNORS was, and continues to be, employed as Chief Financial Officer by DEFENDANT TUTTNAUER USA, COMPANY LIMITED, and works from the corporate USA headquarters located at 25 Power Drive, Hauppauge, Suffolk County, New York.

## FACTUAL ALLEGATIONS

14.     PLAINTIFF is 60 year old woman, of Italian and Sicilian descent, of Christian faith, Catholic denomination, and was employed by DEFENDANT TUTTNAUER USA for twenty-six (26) years.

15.     PLAINTIFF is a married woman, who has been married to her husband, Mr. Daniel Russo for 35 years.

16.     In 1991, PLAINTIFF was hired by DEFENDANT TUTTNAUER USA as Corporate accounting manager. PLAINTIFF was promoted to Corporate Secretary/Controller in 1992.

17.     At all times relevant to this Complaint PLAINTIFF was, and remained, qualified for the positions she held and the work she was required to perform.

18.     Based upon the corporate filings available through New York State Department of State Corporate filings, DEFENDANT TUTTNAUER USA remains a domestic corporation, irrespective of the foreign Israeli interests in DEFENDANT TUTTNAUER USA.

19.     The first instance of sexual harassment experienced by PLAINTIFF while employed by DEFENDANT TUTTNAUER USA occurred in or about November 1991,when then-Vice President of DEFENDANT TUTTNAUER USA, Eitan Lowe, would inappropriately place his arm around PLAINTIFF or on PLAINTIFF's shoulder while at the workplace.

20.     Additionally, Mr. Lowe repeatedly made unwanted and unwelcome sexual advances by repeatedly inviting PLAINTIFF to have dinner, after work hours, at a house rented by DEFENDANT TUTTNAUER USA. Mr. Lowe's sexual harassment of PLAINTIFF ceased in or about January, 1992, when Mr. Lowe was no longer an employee of DEFENDANT TUTTNAUER USA.

21.    In 2008, PLAINTIFF was subjected to sexual harassment by then-Chief Financial Officer, Matteo Tumasella. Mr. Tumasella developed a routine of following PLAINTIFF throughout office and would make inappropriate sexual comments regarding PLAINTIFF's body.

22.    On one occasion in 2008, Mr. Tumasella told PLAINTIFF that she has a "nice pair of Italian boobs. They stand up like soldiers." Mr. Tumasella would make sexually charged and offensive comments, such as the aforementioned, when PLAINTIFF was called into Mr. Tumasella's office for alleged business reasons.

23.    Mr. Tumasella's sexual harassment of PLAINTIFF ceased in or about November 2008, when Mr. Tumasella left the employment of DEFENDANT TUTTNAUER USA.

24.    Senior management knew that Mr. Tumasella was sexually harassing PLAINTIFF as Mr. Tumasella's sexual remarks were often made in front of male members of Senior Management. Instead of taking action to halt the harassment, senior management chose to make jokes at PLAINTIFF's expense regarding the humiliating and unwanted advances by Mr. Tumasella.

25.    For example, during Mr. Tumasella's tenure, DEFENDANT BASILE, Senior Vice President of DEFENDANT TUTTNAUER USA, stated numerous times in front of senior management, including but not limited to, Mr. Ran Tuttnauer, Mr. Michael Sammett, and DEFENDANT CONNORS "If Barbara ever stopped short, they would have to surgically remove Matteo's [Mr. Tumasella's] head from Barbara's ass."

26.    On or about July of 2014, DEFENDANT CONNORS became the Chief Financial Officer ("CFO") of DEFENDANT TUTTNAUER USA, at which time, PLAINTIFF became DEFENDANT CONNORS' subordinate within the company. As such, PLAINTIFF was required to report to DEFENDANT CONNORS regularly as part of PLAINTIFF's job duties.

6

27.     DEFENDANT CONNORS, as CFO was at all times a decision maker, employer and PLAINTIFF's superior. In or about November of 2015, DEFENDANT CONNORS began what was to become a campaign of sexual harassment against PLAINTIFF.

28.     In or about November 2015, DEFENDANT CONNORS commenced his unwanted sexual advances by acting in a sexually suggestive manner toward PLAINTIFF. For example, DEFENDANT CONNORS would wink and smile at PLAINTIFF in an inappropriate manner while at the workplace.

29.     As time progressed DEFENDANT CONNORS' unwanted sexual advances and harassment increased and became more aggressive and physical as the time passed. DEFENDANT CONNORS used his position of authority to make unsolicited sexual advances directed at PLAINTIFF and subjected PLAINTIFF to abusive and offensive language.

30.     On or about January 4, 2016, while PLAINTIFF was in DEFENDANT CONNORS' office conducting usual business matters, DEFENDANT CONNORS asked PLAINTIFF for a "New Year's kiss." When PLAINTIFF rejected the advances, DEFENDANT CONNORS grabbed PLAINTIFF'S arm and kissed PLAINTIFF's neck. This action was unwelcome.

31.     On or about January 12, 2016, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS asked PLAINTIFF if she was "on her period." PLAINTIFF perceived that DEFENDANT CONNORS was asking about PLAINTIFF's menstruation cycle by the language used by DEFENDANT CONNORS. Plaintiff found this question intrusive and offensive.

32.     On or about January 18, 2016, DEFENDANT CONNORS continued to wink and stare at PLAINTIFF when she walked in the hallway. DEFENDANT CONNORS continued this unsolicited sexual leering on a daily basis through January 26, 2016, all of which made PLAINTIFF extremely uncomfortable.

33.     On or about March 4, 2016, DEFENDANT CONNORS exited the bathroom and entered PLAINTIFF's office with his penis exposed. DEFENDANT CONNORS smirked at PLAINTIFF as she yelled at him to exit her office. This action and others made Plaintiff extremely uncomfortable in her workplace.

34.     That evening, on or about March 4, 2016, PLAINTIFF wrote a complaint to then President of TUTTNAUER, Mr. Ran Tuttnauer, in which she described the nature of DEFENDANT CONNORS' unsolicited offensive, sexually charged conduct. PLAINTIFF was never contacted by Mr. Tuttnauer in regards to the incident in which DEFENDANT CONNORS' exposed his penis to PLAINTIFF in her officer during work hours.

35.     On or about March 14, 2016, during a conversation with DEFENDANT CONNORS, DEFENDANT CONNORS made derogatory comments about Michael Sammett (hereinafter "Sammett"-upon information and belief he is a Jewish man), the Chief Financial Officer from then-parent company, TUTTNAUER LTD Israel, based on Mr. Sammett's religion and ethnicity. DEFENDANT CONNORS said that Mr. Sammett "smells like fish and spits when he talks." When Sammett left the building, DEFENDANT CONNORS used a can of Lysol to disinfect DEFENDANT CONNORS' office where Mr. Sammett had been.

36.     On or about March 22, 2016, while PLAINTIFF was conversing with DEFENDANT CONNORS in his office, DEFENDANT CONNORS continued to speak in a demeaning manner

about Mr. Sammett, because of Mr. Sammett's religion and ethnicity. While in PLAINTIFF's presence, DEFENDANT CONNORS said that "Michael [Mr. Sammett] wears the same clothes for the entire week that he is here. He smells and does not use soap or deodorant."

37.    On or about March 21, 2016, PLAINTIFF asked DEFENDANT CONNORS if he needed lunch. DEFENDANT CONNORS responded, "Let's eat each other for lunch." Plaintiff found this statement to be offensive and was not welcomed in any way.

38.    On or about March 24, 2016, while in PLAINTIFF's presence, DEFENDANT CONNORS made a comment that Tuttnauer USA's Warranty Administrator, Ms. Alice Mary Gruninger (herein "Ms. Gruninger"), "would never drown with her flotation devices." DEFENDANT CONNORS was making reference to Ms. Gruninger's breasts. This comment made Plaintiff very uncomfortable and not only was unwelcome, but was offensive to Plaintiff.

39.    On the same day, on or about March 24, 2016, DEFENDANT CONNORS made the additional degrading comment regarding Ms. Gruninger, that DEFENDANT CONNORS "wouldn't touch her with a ten foot pole." DEFENDANT CONNORS then told PLAINTIFF that he would like to touch PLAINTIFF with "his pole." These comments were made while PLAINTIFF was in DEFENDANT CONNORS' office performing PLAINTIFF's work duties. All said comments were seen as crass, were unsolicited by PLAINTIFF and made PLAINTIFF feel extremely disquieted, self-conscious and uncomfortable.

40.    On or about April 14, 2016, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS closed the door, and attempted to massage PLAINTIFF's shoulders as PLAINTIFF was seated in a chair. PLAINTIFF rejected DEFENDANT CONNORS' unwanted sexual advances, and left DEFENDANT CONNORS' office rapidly.

41.    On or about May 13, 2016, DEFENDANT CONNORS made a comment regarding DEFENDANT TUTTNAUER USA's Warehouse Manager, Randy Polansky (hereinafter "Mr. Polansky"), regarding Mr. Polansky's Jewish faith. DEFENDANT CONNORS stated, "Fucking Jews and their religious beliefs. Randy takes off more days than on the Jewish calendar. I think he makes these days up."

42.    These comments were incited, because Mr. Polansky leaves work early on Fridays for religious reasons and to observe his Sabbath. These comments were made in DEFENDANT CONNORS' office and were repeated in front of the Senior Vice President, DEFENDANT BASILE as well. DEFENDANT BASILE, like PLAINTIFF and DEFENDANT CONNORS, was responsible for Human Resource related issues, yet DEFENDANT BASILE did nothing to address DEFENDANT CONNORS' offensive and discriminatory behavior.  Notably both DEFENDANTS BASIL and CONNORS were PLAINTIFF'S superiors at the time of the herein described occurrence.

43.    On or about June 13, 2016, DEFENDANT CONNORS made a derogatory sexist comment regarding people of the Jewish faith. DEFENDANT CONNORS said "Jew women need to take a bath. They smell like Michael Sammett."  This comment was offensive to PLAINTIFF as a woman, and seen as an attack on the faith practices of Mr. Sammett.

44.    In or about 2014, three Black employees were fired from DEFENDANT TUTTNAUER USA and subsequently sued the company.

45.    Based upon information and belief, in response to the three Black employees' lawsuits, Ran Tuttnauer, the then-President of DEFENDANT TUTTNAUER USA, made it a policy to not hire any new Black or African American employees.

46.     When DEFENDANT CONNORS learned of this policy not to hire any new Black or African America employees, DEFENDANT CONNORS made it a routine to sing this song "There But for the Grace of God Go I", with the added discriminatory and offensive lyrics "No blacks, no Jews, and no gays" in the office.

47.     DEFENDANT BASILE, as a decision maker, and employer, and as Senior Vice President of DEFENDANT TUTTNAUER USA, was responsible for addressing discrimination and harassment issues in the workplace, yet DEFENDANT BASILE was a participant in the discriminatory and harassing behavior.

48.     PLAINTIFF notified then-President of TUTTNAUER, Ran Tuttnauer, of the sexual harassment PLAINTIFF was subjected to by DEFENDANT CONNORS, and the disturbing and pervasive discrimination and harassment by DEFENDANT CONNORS directed at PLAINTIFF as well as Jewish, African American and other female employees based on their protected status. PLAINTIFF reported the discrimination and harassment verbally to Mr. Ran Tuttnauer on more than one occasion, then in a written letter in or about March 4, 2016.  Mr. Ran Tuttnauer ignored both PLAINTIFF's written and verbal complaints.

49.     On or about June 21, 2016, DEFENDANT CONNORS was humming lyrics from a song called "There But for the Grace of God Go I", in which DEFENDANT CONNORS repeated "No blacks, no Jews, and no gays" while in the office.

50.     On or about June 23, 2016, DEFENDANT CONNORS walked into PLAINTIFF's office and made crude sexual gestures with his hips that were directed toward PLAINTIFF. PLAINTIFF believed DEFENDANT CONNORS' gestures to be motivated by the fact that PLAINTIFF was wearing a dress, as opposed to the style of pants that PLAINTIFF typically wore

11

to work. Plaintiff rejected this overture and was appalled and sickened by these acts.

51.     On or about July 18, 2016, DEFENDANT CONNORS entered PLAINTIFF's office and made unsolicited sexually suggestive comments toward PLAINTIFF saying that DEFENDANT CONNORS had "the hots" for PLAINTIFF. PLAINTIFF took this comment as a crude attempt by DEFENDANT CONNORS to express his sexual attraction toward PLAINTIFF. This attempt was not solicited, was offensive to PLAINTIFF, and was rebuffed.

52.     On or about July 19, 2016, while PLAINTIFF was in DEFENDANT CONNORS' office, PLAINTIFF placed work related folders on DEFENDANT CONNORS' desk. As PLAINTIFF was in said office, DEFENDANT CONNORS unexpectedly closed the door, and commenced to physically rub his body against PLAINTIFF's without invitation, and unwantedly. PLAINTIFF resisted this action, and told CONNORS to stop it.

53.     On or about July 21, 2016, while PLAINTIFF was in DEFENDANT CONNORS ' office, DEFENDANT CONNORS made a comment that he "hates these fucking Jews. They think they know everything about everything."

54.     On or about July or August of 2016, PLAINTIFF complained about the hostile work environment and sexual advances in a brief conversation with Mr. Ran Tuttnauer. He chose to ignore PLAINTIFF's complaints of sexual harassment by DEFENDANT CONNORS, and instead focused on discussing business issues and other financial matters.

55.     In or about October 7, 2016, DEFENDANT CONNORS made derogatory remarks about an African American employee, Paul Thompson (herein "Mr. Thompson"). Mr. Thompson is a Service Technician in the Tabletop Division of DEFENDANT TUTTNAUER USA and at that time Mr. Thompson was the only African American employee. When DEFENDANT CONNORS

learned that Mr. Thompson wanted to add his child to the company health insurance plan, DEFENDANT CONNORS made the comment that "We gotta add it for him. You know how they multiply." Plaintiff found this comment to be outrageous and racist.

56.     On or about October 11, 2016, DEFENDANT CONNORS made derogatory remarks regarding an employee named Carmela Croce (herein "Ms. Croce"). Ms. Croce worked in the accounts receivable department, and DEFENDANT CONNORS expressed his disdain for Ms. Croce to PLAINTIFF on numerous occasions.

57.     On or about November 2, 2016, DEFENDANT CONNORS requested that PLAINTIFF falsify dates in which Ms. Croce allegedly cursed at a temporary employee. When PLAINTIFF told DEFENDANT CONNORS that she did not remember the dates, DEFENDANT CONNORS said to "make up the dates, we have to get her out of here."

58.     On or about November 4, 2016, it was announced that Ms. Croce would be retiring. DEFENDANT CONNORS' comment to PLAINTIFF was, "Good, got her out! She wasn't going to last. She made it easy for us. Do you think she will sue us?"

59.     On or about November 7, 2016, while DEFENDANT CONNORS was in PLAINTIFF'S office, DEFENDANT CONNORS, unsolicited and unwantedly, sexually assaulted PLAINTIFF and pressed his body against PLAINTIFF and grabbed PLAINTIFF's breast. PLAINTIFF was in fear, and immediately demanded that DEFENDANT CONNORS leave her office.

60.     PLAINTIFF did not report this incident because PLAINTIFF felt that after seeking help from the head of the company just months before, she had no recourse. PLAINTIFF was scared that she would lose her job if PLAINTIFF made a report, because when PLAINTIFF previously

made mention of DEFENDANT CONNORS' actions to the President of the company there was absolutely no one from whom she could seek redress.  PLAINTIFF felt she had no option but to exist in this hostile work environment which was both toxic and physically threatening.

61.     On November 9, 2016, DEFENDANT CONNORS stated to PLAINTIFF regarding another female employee, Elena Tumbarello (herein "Ms. Tumbarello"), "Why does she always wear black? Does she think she looks sexy? Fat whore." This comment was offensive to PLAINTIFF, and placed Plaintiff in greater emotional distress and turmoil which made her fearful about her workplace.

62.     On or about December 6, 2016, while PLAINTIFF was in her office, DEFENDANT CONNORS walked in and asked PLAINTIFF if she was "on the rag today?" PLAINTIFF understood the comment to mean that DEFENDANT CONNORS was asking if PLAINTIFF was on her menstruation cycle. This comment/question, like others, had no legitimate relationship to the work for which PLAINTIFF was hired.

63.     On or about December 7, 2016, while in PLAINTIFF'S office, DEFENDANT CONNORS again sexually assaulted PLAINTIFF when he unsolicited and unwantedly, grabbed PLAINTIFF's hand and attempted to place it on DEFENDANT CONNORS' groin area. When PLAINTIFF pulled her hand away, DEFENDANT CONNORS asked PLAINTIFF if she was on her "rag." PLAINTIFF understood this comment to mean that DEFENDANT CONNORS was asking if PLAINTIFF was on her menstruation cycle. PLAINTIFF was horrified, felt threatened, was in great fear and rejected this action.

64.     On or about January 6, 2017, DEFENDANT CONNORS made a statement that the female employees at DEFENDANT TUTTNAUER USA were "a bunch of old fuckers. We need

new White blood." This sexist, ageist and racist comment was unwelcome and offensive.

65.     On or about January 16, 2017, while PLAINTIFF was in DEFENDANT CONNORS'

office, DEFENDANT CONNORS, once again sexually assaulted PLAINTIFF when he unsolicited,

and unwantedly, grabbed PLAINTIFF's wrists, and pulled them over PLAINTIFF's head.

DEFENDANT CONNORS then stated to PLAINTIFF, "if you like your job, you know what you

need to do for me," while licking his lips. PLAINTIFF understood this comment to mean that if

PLAINTIFF did not accept DEFENDANT CONNORS' sexual advances, PLAINTIFF would lose

her job. This further act of sexual abuse, and clear quid pro quo added to the overtly hostile work

environment to which PLAINTIFF was subjected. PLAINTIFF pushed DEFENDANT CONNORS

away and rejected this advance.

66.     On or about February 17, 2017, DEFENDANT CONNORS made derogatory

comments about Mr. Polansky, then age 61, and Hank Dierschke (hereinafter "Mr. Dierschke"), then

age 62, based on their age, religion and ethnicity.

67.     DEFENDANT CONNORS said "Fucking Jews. Randy needs to retire. He's not a

manager, he is the highest paid shipping clerk in the country. And Hank is another one, we could get

rid of him and get two people for his salary." Mr. Dierschke was the Service Manager at

DEFENDANT TUTTNAUER USA.

68.     On or about April 19, 2017, PLAINTIFF mentioned she had lost twenty pounds

while eating lunch with her colleagues during lunch break. Later in the day, DEFENDANT

CONNORS told PLAINTIFF that PLAINTIFF looked great and made the offensive and unwelcome

statement, "I would do you in a heartbeat." Said comments by DEFENDANT CONNORS were

unsolicited, and unwanted by PLAINTIFF. PLAINTIFF was placed in fear and felt that her

workplace was toxic and unsafe.

69.    On or about April 24, 2017, while in PLAINTIFF's office DEFENDANT CONNORS made a disparaging sexual comment directed at PLAINTIFF. DEFENDANT CONNORS stated "You know what is good for diabetes? Protein. I've got protein [sperm] for you." PLAINTIFF understood this comment to be a sexually offensive innuendo. DEFENDANT CONNORS made this comment to PLAINTIFF after a discussion about PLAINTIFF's diabetic condition. PLAINTIFF had stated that she needed to have more protein in her diet due to PLAINTIFF's increased glucose levels.

70.    On or about May 2, 2017, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS made yet another derogatory comment regarding Jewish people. DEFENDANT CONNORS stated "Fucking Jews. Can't stand them all." PLAINTIFF tried to ignore this comment.

71.    On or about May 3, 2017, DEFENDANT CONNORS came into PLAINTIFF's office and stated "I hope that Alice Mary doesn't wear those white pants. Her saggy old ass shows through." This comment was a further attack on women, and PLAINTIFF took this personally and refused to engage by responding.

72.    The sexual assaults continued as on or about May 5, 2017, DEFENDANT CONNORS put his hand on PLAINTIFF's leg, and started to move his hand up PLAINTIFF's thigh towards PLAINTIFF's groin area and said "we should go out for some afternoon delight." PLAINTIFF rebuffed this behavior. DEFENDANT CONNORS later stated "fucking Jews" as PLAINTIFF left DEFENDANT CONNORS' office.

73.     On or about May 9, 2017, while in PLAINTIFF's office, DEFENDANT CONNORS grabbed PLAINTIFF's buttocks as PLAINTIFF was walking past DEFENDANT CONNORS toward PLAINTIFF's desk. PLAINTIFF told him to stop what he was doing as DEFENDANT CONNORS grabbed PLAINTIFF, DEFENDANT CONNORS said "Firm. How about some rough sex?"

74.     On or about June 1, 2017, Ms. Gruninger wrote an email to her boss, Rich Kelstein, a Vice President at DEFENDANT TUTTNAUER USA, explaining that DEFENDANT CONNORS was harassing Ms. Gruninger by stalking, taking unsolicited photographs, and treating Mr. Gruninger in a harsh and demeaning manner.

75.     On or about June 9, 2017, while in DEFENDANT CONNORS' office, DEFENDANT CONNORS exclaimed to PLAINTIFF once again, "Have I said it before? I hate the Fucking Jews!"

76.     On or about June 19, 2017, while in PLAINTIFF's office, DEFENDANT CONNORS approached PLAINTIFF, and asked PLAINTIFF what she wanted for her birthday. DEFENDANT CONNORS then grabbed his groin area and said, "I got your birthday present right here." DEFENDANT CONNORS' actions were unsolicited and unwanted. PLAINTIFF perceived DEFENDANT CONNORS comments and actions to be an aggressive unwanted invitation to engage in sexual activity which she rejected.

77.     On or about June 27, 2017, while in DEFENDANT CONNORS' office, DEFENDANT CONNORS asked PLAINTIFF if PLAINTIFF had plans for Independence Day. DEFENDANT CONNORS then told PLAINTIFF that "he would like to make [her] see fireworks," after which DEFENDANT CONNORS squeezed PLAINTIFF's hand. PLAINTIFF perceived this behavior to be another physical assault, and aggressive unsolicited sexual advance by DEFENDANT

CONNORS. This too was rebuffed.

78.    On July 11, 2017, while in DEFENDANT CONNORS' office for business purposes, DEFENDANT CONNORS put his arms around PLAINTIFF, kissed PLAINTIFF on the lips, and tried to touch PLAINTIFF's breast.    PLAINTIFF immediately opened the door, and escaped DEFENDANT CONNORS' office by running out.

79.    On or about July 21, 2017, while in PLAINTIFF's office, Alice Mary Gruninger, Warranty Administrator, walked past PLAINTIFF's office. Soon thereafter, DEFENDANT CONNORS entered PLAINTIFF's office, and said that Ms. Gruninger is an "old fucker. I can't wait to get rid of her. She's not sexy like you." DEFENDANT CONNORS then proceeded to force PLAINTIFF against the wall in PLAINTIFF's office.    This was clearly another sexual assault which PLAINTIFF had to physically resist.

80.    On or about August 8, 2017, DEFENDANT CONNORS exited the bathroom, directly across from PLAINTIFF's office, with his penis exposed and walked into PLAINTIFF's office. Ms. Gruninger was a witness to this incident. Ms. Gruninger exclaimed "Oh my God!" as Ms. Gruninger walked away. PLAINTIFF immediately yelled at DEFENDANT CONNORS to leave PLAINTIFF's office. PLAINTIFF chose not to report this incident on that day out of the fear of being fired.

81.    However, on or about August 9, 2017, PLAINTIFF reported to DEFENDANT BASILE that there were going to be major issues with DEFENDANT CONNORS if DEFENDANT CONNORS did not change his behavior in terms of sexual harassment and discrimination.  Nothing was done in response to PLAINTIFF's complaints.

82.     On or about August 10, 2017, while PLAINTIFF was seated in DEFENDANT CONNORS' office, DEFENDANT CONNORS approached PLAINTIFF getting uncomfortably close, sniffed PLAINTIFF's neck, and told PLAINTIFF that she "smells real good." PLAINTIFF pulled away and was in fear for her safety and personal security.

83.     On or about August 16, 2017 DEFENDANT CONNORS stated to PLAINTIFF "That's a nice top. The blouse is nice too.  Are you wearing a bra today?  What color are your panties?" PLAINTIFF was in total disbelief, shocked and did not know what to do as she feared for her safety and her job.

84.     On or about August 21, 2017, while in PLAINTIFF's office, DEFENDANT CONNORS approached PLAINTIFF and asked, "What's the matter? Are you on your period today?" PLAINTIFF understood this comment to mean that DEFENDANT CONNORS was asking PLAINTIFF if she was on her menstruation cycle. PLAINTIFF refused to respond.

85.     On or about August 25, 2017, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS approached PLAINTIFF and asked "if [she] would like to keep [her] job?" DEFENDANT CONNORS then told PLAINTIFF, "You know what you need to do for me." PLAINTIFF responded what are you referring to? DEFENDANT CONNORS then stated with a smirk on his face "I want to be alone with you.  You know what you need to do for me." PLAINTIFF understood this comment to mean that if PLAINTIFF did not accept DEFENDANT CONNORS' sexual advances, PLAINTIFF would lose her job.

86.     In or about the month of August, 2017, DEFENDANT TUTTNAUER USA was purchased by a company named Fortissimo Capital, a private equity firm. The new owners were Nir Kilroy (hereinafter "Kilroy"), Shmulik Barashi (hereinafter "Barashi"), and David Weis (hereinafter

"Weis"). In or about the same month, during a company meeting Mr. Kilroy, Mr. Barashi, and Mr. Weis announced  that "Nobody should be afraid of being fired or let go. We are going to add many people to this company. We are looking to grow Tuttnauer. We want to be totally transparent with our employees."  Employees were also told that employees would be given stock options and job security.

87.    In or about the month of September, 2017, Mr. Kilroy hosted a company meeting in which he reiterated that "Nobody is going to be let go from this company. Do not be afraid of losing your job. We are going to grow the company. Each department will double in size. We are looking to grow our sales so we need the people."

88.    On or about November 27, 2017, DEFENDANT CONNORS said to PLAINTIFF regarding another female employee of Respondents', "Christina has a nice big ass."  Plaintiff found this statement offensive, and refused to engage CONNORS.

89.    On or about December 4, 2017, while conversing with DEFENDANT CONNORS, PLAINTIFF mentioned to DEFENDANT CONNORS that PLAINTIFF has a dog. DEFENDANT CONNORS' response was that "He is a very lucky dog." Then DEFENDANT CONNORS licked his lips in the same fashion as that of a dog. PLAINTIFF understood this conduct to be another disgusting unsolicited sexually sexual advance directed at PLAINTIFF by DEFENDANT CONNORS.

90.    On or about January 2, 2018, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS approached PLAINTIFF, kissed PLAINTIFF's lips, and said, "Happy New Year." PLAINTIFF did not report this incident still out of fear that she would lose her job.

91.     Based upon information and belief, on or about July 2017, FORTISSIMO CAPITAL, a large private equity investment firm based in Israel, purchased TUTTNAUER ISRAEL's interest in DEFENDANT TUTTNAUER USA.

92.     On or about January 8, 2018, while walking around the office, DEFENDANT CONNORS again sang "No more Niggers, no Jews and no gays."

93.     On or about January 10, 2018, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS placed his hands on PLAINTIFF's shoulders and asked PLAINTIFF if PLAINTIFF liked her job. PLAINTIFF took this conduct to be an insinuation that if PLAINTIFF did not accept DEFENDANT CONNORS' advances, PLAINTIFF would be fired.

94.     On or about January 11, 2018, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS inappropriately placed his hand on PLAINTIFF's knee, and squeezed in a suggestive manner. PLAINTIFF told him to stop it and understood this conduct to be an unwelcome sexual advance.

95.     On or about January 16, 2018, while PLAINTIFF was in DEFENDANT CONNORS' office, DEFENDANT CONNORS closed his door. DEFENDANT CONNORS then placed his hands on PLAINTIFF's shoulders, and rubbed them in a suggestive manner. This made PLAINTIFF very uncomfortable and she left his office as quickly as she could.

96.     On or about January 17, 2018, DEFENDANT CONNORS invited PLAINTIFF to go to lunch with him. DEFENDANT CONNORS claimed that he needed to tell PLAINTIFF something. However, PLAINTIFF refused to go with DEFENDANT CONNORS.

97.     On or about January, 26, 2018, while in PLAINTIFF's office, DEFENDANT CONNORS asked PLAINTIFF to get a file. DEFENDANT CONNORS then squeezed PLAINTIFF,

and unsolicited and unwantedly, rubbed his body up against PLAINTIFF. DEFENDANT CONNORS became more aggressive and forcefully assaulted PLAINTIFF and pinned her down on the desk.

98.    PLAINTIFF said "you are hurting me, get off of me." PLAINTIFF grabbed her bag and left for home. PLAINTIFF essentially was forced to run out of the office for fear of being further sexually assaulted or raped, prior to the end of her work day.

99.    As a result of the January 26, 2018, physical attack by DEFENDANT CONNORS, PLAINTIFF had marks on her forearms, and on the left side of her neck. PLAINTIFF was in fear to return to work.

100.    DEFENDANT CONNORS' pattern of predatory behavior included threatening comments on multiple occasions. DEFENDANT CONNORS specifically stated that PLAINTIFF's "entire family will be in big trouble if you lose your job and medical benefits. I could make or break you regarding the future of your employment." DEFENDANT CONNORS repeatedly made these comments, and comments like these, to PLAINTIFF throughout 2016 and up to, and including, the end of January 2018. DEFENDANT CONNORS was aware that PLAINTIFF's husband and son suffered from a serious life threatening illness, and relied on the health insurance based on PLAINTIFF's employment. DEFENDANT CONNORS made *quid pro quo* demands for sexual favors in exchange for PLAINTIFF's continued employment with DEFENDANT TUTTNAUER USA.

101.    From 2001 through 2018 a voluminous number of highly offensive and discriminatory emails were sent to employees, including PLAINTIFF at the work place and during work hours. Said emails contained highly offensive material targeting African Americans, people

22

of Chinese decent, Latinos, people of the Jewish, Christian and Muslim faiths, and were highly

sexual in nature and degrading to women. Some of said emails were disseminated by DEFENDANT

BASILE, and DEFENDANT BASILE was the receipt on many such emails.

102.    On Tuesday, July 19, 2005, at approximately 10:12 a.m. PLAINTIFF received an

email from Rachel Smith and the subject line stated, "Straight Ghetto!" Attached to the email were

twelve (12) racially charged, and offensive pictures of African-American people.

103.    On Monday, April 11, 2011, at approximately 9:28 a.m. PLAINTIFF received an

offensive and racially charged email from Paul Thompson. The subject line said, "Health Care finally

some GOOD NEWS". The body of the email states:

> Health Care finally some GOOD NEWS... If you cant afford a doctor, go to an
> airport–you'll get a free x-ray and breast exam, and, if you mention Al Queda, you'll
> get a free colonoscopy.

104.    On Tuesday, December 13, 2016, at approximately 1:53 p.m. PLAINTIFF received

an offensive and racially charged email from DEFENDANT BASILE which was abusive towards

Muslims, which PLAINTIFF found offensive. The subject line stated, "Muslim Bookstore...". The

body of the email states:

> "So, I was walking through Chicago and I saw that there was a "'Muslim Book
> Store."' I was wondering what exactly was in a Muslim bookstore, so I went in.

> As I was wandering around taking a look, the clerk stopped me and asked if he could
> help me.

> I imagine I didn't look like his normal clientele, so I asked, "'Do you have a copy of
> Donald Trump's book on his U.S. Immigration Policy regarding Muslims and illegal
> Mexicans?'"

> The clerk said,'" F*** off, get out and stay out!'"

> I said,"Yes, that's the one. Do you have it in paperback?"

23

105.    On Thursday, August 10, 2017, at approximately 3:29 p.m. PLAINTIFF received an offensive and racially charged email from DEFENDANT BASILE which was abusive towards African-Americans. The subject line stated, "When you know you're in the hood...". The body of the email states:

> When you know you're in the "hood"...
> "Show me an American ghetto and I'll show you a place where Democrats are in power."
>     *Al Hayes*
> When you know you're in the "hood"...

106.    Attached to the email were eleven (11) racially charged and offensive pictures of African-American people and African-American owned businesses.

107.    On or about February 1, 2018, DEFENDANT CONNORS entered PLAINTIFF's office and told PLAINTIFF that PLAINTIFF's position was eliminated effective immediately.

108.    DEFENDANT CONNORS further told PLAINTIFF that the instruction came from Israel Fortissimo who is senior management at TUTTNAUER USA.

109.    This was PLAINTIFF's only notice regarding PLAINTIFF's termination.

110.    PLAINTIFF was not offered an exit interview, severance package, or any legitimate reason regarding why PLAINTIFF's position was eliminated.

111.    PLAINTIFF immediately packed her belongings and left the facility.

112.    In the proceeding days, PLAINTIFF received a general release letter from DEFENDANT TUTTNAUER USA which stated that she was terminated from the company. However, the letter made no mention as to when PLAINTIFF's insurance coverage would cease.

113.    PLAINTIFF was in shock when she was terminated, because as recent as a week prior to her termination PLAINTIFF was told by DEFENDANT BASILE, Senior Vice

President, to whom PLAINTIFF reported for twenty-six years, that PLAINTIFF was doing an outstanding job, was underpaid, and that DEFENDANT BASILE did not understand how PLAINTIFF could take on a large work load and do it while continuing to meet deadlines in both full-time positions.

114.    DEFENDANT BASILE often told PLAINTIFF in front of Mr. Ran Tuttnauer, the President of DEFENDANT TUTTNAUER USA, Michael Sammett, the CFO of DEFENDANT TUTTNAUER USA, and Nir Kilroy, from FORTISSIMO CAPITAL, that PLAINTIFF was one of the best controller-accountants that DEFENDANT TUTTNAUER USA ever hired.

115.    PLAINTIFF, a female with over 26 years experience, was terminated in favor of DEFENDANT CONNOR, a white male with less experience, having worked for DEFENDANT TUTTNAUER USA for less than four years.   DEFENDANT CONNOR was paid more than PLAINTIFF in terms of salary and benefits.

116.    To add insult and further discrimination to injury, PLAINTIFF' s position was in fact filled by a younger white male, Yohan, whose salary and benefits far exceed that of PLAINTIFF's while PLAINTIFF was employed with DEFENDANT TUTTNAUER USA.

117.    DEFENDANTS failed to provide PLAINTIFF with insurance coverage for the remainder of the month in which she was terminated along with the following month as was DEFENDANT TUTTNAUER USA's policy and custom.

118.    On or about February 26, 2018, PLAINTIFF received a COBRA packet from EPC Associates, Inc., the company insurance broker. The packet contained a notice that PLAINTIFF's medical coverage would be terminated in the proceeding two (2) days.

119.     PLAINTIFF received less than thirty days of medical coverage, which was different than other employees in a similarly situated position, who was separated from DEFENDANT TUTTNAUER USA.

120.     DEFENDANT TUTTNAUER USA's policy was to provide employees who were terminated or separated, with medical insurance coverage for their final month, and at least one additional month. The medical insurance coverage included medical, dental and vision, all of which PLAINTIFF did not receive.

121.     As a result of PLAINTIFF's termination, PLAINTIFF was forced to forgo many doctor appointments that were scheduled for the month of March, 2018.

122.     Ms. Gruninger, an employee that was terminated on December 6, 2017, received full medical coverage for the months of December 2017 and January 2018.

123.     Val Pescaru, a DEFENDANT TUTTNAUER USA employee, left the company on or about August 26, 2017, and yet received medical insurance coverage through October 31, 2017.

124.     Ms. Victoria Luneburg, a DEFENDANT TUTTNAUER USA employee that switched from full-time to part-time hours, received full medical coverage for the months of April and May in 2017.

125.     Pursuant to DEFENDANT TUTTNAUER USA's company policy, an employee needs to work thirty-seven and one half hours per week to receive coverage. Ms. Luneberg did not meet this requirement, however Ms. Luneburg continued to receive medical coverage.

126.     On or about June 11, 2018 PLAINTIFF filed her complaint of discrimination and retaliation for opposing discrimination, sexual harassment, hostile work environment and wrongful termination based on sex race/color, national origin and, creed against DEFENDANTS through

PLAINTIFF'S counsel with New York State Division of Human Rights (herein "NYSDHR), Case No. 1019585 and cross filed with the Equal Employment Opportunity Commission (herein EEOC), Federal Charge No. 16GB804205.

127.    On or about February 25, 2019, NYSDHR made a PROBABLE CAUSE finding, based upon NYSDHR's FINAL INVESTIGATION REPORT AND BASIS FOR DETERMINATION, also dated February 25, 2019 in which NYSDHR explicitly stated that PLAINTIFF's report of discrimination and sexual harassment was one of three formal complaints NYSDHR has received regarding DEFENDANTS, including DEFENDANT CONNORS and BASILE.

128.    Specifically, the Investigator for NYSDHR stated in the Final Investigation Report and Basis for Determination:

> The Division notes related complaint *Anderson S. Pineda v Tuttnauer* USA .. 10196274 filed 8/1/2018 alleging similar behaviors as alleged by Complainant. The Complainant who is Hispanic alleged Kevin Conner would make "vile and disgusting jokes about women and minorities. KC would say that the laziest of all niggers would work faster than me." ... Complainant Pineda also allege Kevin made fun of his accent and ethnicity. Complainant Pineda also stated. "KC made comments about Alice Mary and other women. He would say "she needs to put her saggy tits back in her shirt.: He would lick his lips when Barbara would pass b [sic]. When Randy would take off a religious holiday off[sic], KC would say these"Fuckin Jews. They are always off"

All of which corroborate PLAINTIFF's allegations of a hostile work environment permeated with discrimination based on gender, sex, and religion and sexual harassment by DEFENDANT CONNORS, the CFO of DEFENDANT TUTTNAUER USA.

129.    NYSDHR further referenced some of the similar specifics of the companion cases NYSDHR received against the same DEFENDANTS:

In addition to *Anderson S. Pineda* (10196274)filed in 2018, the companion cases

filed by *Wendy Taldone* (10138024; 12/1/09) and *Matthew D. Koch* (10139338; 2/9/10), support that Respondents have had an openly discriminatory workplace for years. The Taldone and Koch matters were determined Probable Cause and sent to hearing.

Discussing a different harasser, Ms. Taldone stated in an interview with the Division in August 2010, that the sexually harassing and discriminatory comments started "the first day ... " Her boss would constantly talk about his c*ck, blow-jobs, not getting enough sex from his wife, and pornography. She stated that "every sexual comment had many witnesses." Complainant reported that after her boss found out she was dating Mr. Koch, he responded by showing Mr. Koch pornography at work.

Mr. Koch reported the same in his September 2010 Division interview, about how Ms. Taldone's harasser would goggle pornography while Ms. Taldone was sitting there. Mr. Koch reported that Ms. Taldone went to human resources at the time and they did absolutely nothing. The harasser began to call Mr. Koch various gay slurs for being offended by the harasser's behavior. The harasser would also call an African-American worker "a nigger" when he was not around.

The Division cannot ignore the multiple consistent sources that indicate that Respondents have had and continue to have a discriminatory hostile workplace for years, despite notice. The investigation reveals issues of fact and credibility that can only be resolved after a public hearing where witnesses testify under oath, are subject to cross examination and a full record is made.

130.    PLAINTIFF also provided NYSDHR with a voluminous number of emails that ranged from 2001 to 2018 described by NYSDHR in it's Final Report and Basis for determination as follows:

Complainant substantiated to the Division, paragraph 2 of her letter with voluminous printed emails up to the date of her internal complaint letter. Also included, were further dated emails, including one from, 3/6/17, to Complainant. It was a "joke" about a priest, an old Italian man, a pretty Jewish girl, and the Nazis. The email was from Bob Basile, SVP, [DEFENDANT BASILE] who was referred to in Respondents' position statement as the person to whom Complainant should report discrimination.

Many of the offensive emails were broadcast to groups of coworkers. These emails targeted virtually every protected class, but in the main, were highly sexist and racist. In addition, the file contains offensive material usually printed on Tuttnauer stationary, with photographic images of women and/or men with captions like, "Hi

Barbara nice ass;" "Barbara Russo c*nt;" "Alice Mary [another employee] let me see those big tits;" and about how Complainant would have to perform a sex act to get promoted.

131.    Upon information and belief on December 27, 2019, DEFENDANT TUTTNAUER USA filed a Strategic Lawsuit Against Public Participation "SLAPP suit"against PLAINTIFF, PLAINTIFF'S husband Mr. Daniel T. Russo and PLAINTIFF' s son Richard Russo in the Supreme Court of the State of New York, Suffolk County, *Tuttnauer USA Co. Ltd. v. Russo*, Index No.624996/2019.

132.    On or about December 30, 2019, in an email sent to PLAINTIFF's counsel, counsel for DEFENDANTS threatened PLAINTIFF with this SLAPP lawsuit by stating in sum and substance that if PLAINTIFF made the claims alleged within her NYSDHR's Complaint known to any third party, DEFENDANTS would file a defamation/liable suit against PLAINTIFF.

133.    Upon Information and belief, DEFENDANTS' objective in filing said SLAPP suit is to censor, intimidate, and silence PLAINTIFF by burdening PLAINTIFF with the cost of a legal defense until PLAINTIFF abandons her Civil Right's complaints against DEFENDANTS.

134.    In furtherance of the attempt to dissuade, intimidate and cause fear in PLAINTIFF from pursuing her claims against Defendants, DEFENDANTS served PLAINTIFF and her family with the SLAPP suit on or about March 20, 2020 during the COVID pandemic shutdown.

135.    DEFENDANT TUTTNAUER USA, through their agents and employees, discriminated against the PLAINTIFF in her employment based on PLAINTIFF's gender, and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and subjected PLAINTIFF to a hostile work environment, sexual harassment, and retaliation for opposing discrimination based on sex, gender, race, color, religion; as well as the wrongful

29

termination of PLAINTIFF in violation of Title VII.

**AS AND FOR A FIRST COUNT**
**TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e**
**HOSTILE WORK ENVIRONMENT**

136.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 135 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

137.    DEFENDANT TUTTNAUER USA has a history of subjecting PLAINTIFF and others to discriminatory conduct by its male executive staff including, but not limited to, DEFENDANT BASILE  who held the position of Senior Vice President of DEFENDANT TUTTNAUER USA and DEFENDANT CONNORS the Chief Financial Officer of DEFENDANT TUTTNAUER USA.

138.    The DEFENDANT TUTTNAUER USA through their agents and employees, discriminated against the PLAINTIFF in her employment based on PLAINTIFF's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by creating, and maintaining, a toxic and hostile work environment laced with abuse, acts of discrimination, acts of sexual harassment and assault and threatening PLAINTIFF's employment while engaging in these discriminatory actions.  Further, the work environment was rendered hostile and toxic by the repeated sexual, racial, gender based, religious and age based comments, statements, and abusive actions to which PLAINTIFF was subjected over and over again, while being reminded that her job would be in jeopardy if she complained.

139.    As a direct result of said acts, PLAINTIFF has suffered and continues to suffer loss of income.  PLAINTIFF suffered loss of other employment benefits and continues to suffer distress,

humiliation, embarrassment, great financial expense and damage to her reputation.

140.   As a result of the DEFENDANT TUTTNAUER USA discriminatory acts through their agents and employees, PLAINTIFF is now suffering, and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFF is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

### AS AND FOR A SECOND COUNT
### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e
### SEXUAL HARASSMENT AND SEXUAL ASSAULT

141.   PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 140 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

142.   PLAINTIFF frequently complained to DEFENDANT BASILE regarding DEFENDANT CONNORS' sexual harassment, and discrimination against women, African Americans, and people of the Jewish faith.  DEFENDANT BASILE failed to take any actions to remedy PLAINTIFF's concerns.

143.   PLAINTIFF not only resisted these acts, but reported them to DEFENDANT BASILE, on or about August 9, 2017 and advised him that DEFENDANT TUTTNAUER USA was going to have major issues with DEFENDANT CONNORS if DEFENDANT CONNORS did not stop sexually harassing female employees, and discriminating and harassing employees based on their religion, ethnicity, color and/or national origin.

144.   DEFENDANT CONNORS sexual harassment and sexual assaults, were part of the ongoing pattern of abuse which made the work environment hostile, unwelcoming, intolerable and

toxic to which PLAINTIFF was subjected for a long period of time and began almost immediately after his hire by DEFENDANT TUTTNAUER USA in 2014, and escalated to unsolicited and unwanted physical assault, including but not limited to groping PLAINTIFF's breasts and forcibly kissing in the work place which occurred in 2016, 2017 and 2018. PLAINTIFF was subjected to a hostile pattern of sex based harassment and discrimination, that saturated the work environment and made the work environment toxic. Despite knowing of the hostile work environment, DEFENDANT TUTTNAUER USA failed to take any action to remedy or address the this ongoing and long term work environment. In fact they took actions to support the complained of behavior.

145. DEFENDANT TUTTNAUER USA and DEFENDANT BASILE were aware that PLAINTIFF was not the only female employee that was a victim of DEFENDANT CONNORS' sexually abusive behavior, unwelcome sexual advances, and sexual harassment.

146. DEFENDANTS were all on notice of the sexual harassment and discrimination before March 2016, but under no circumstances no later than March 2016, as either participants and/or PLAINTIFF reporting the illegal actions verbally and/or in written form.

147. For example, but not limited to, on or about June 1, 2017, Ms. Gruninger made a complaint in writing to Ms. Gruninger's boss, Mr. Rich Kelstein, a Vice President at DEFENDANT TUTTNAUER USA, that DEFENDANT CONNORS, the CFO, was sexually harassing Ms. Gruninger. Specifically, Ms. Gruninger reported DEFENDANT CONNORS was stalking Ms. Gruninger, taking unsolicited photographs of Ms. Gruninger and treating her in a harsh and demeaning manner.

148. DEFENDANT CONNORS regularly made sexually offensive comments about female employees in the workplace, including, but not limited to, PLAINTIFF, Ms. Gruninger and

"Christina" which were witnessed by other employees. Mr. Anderson Pineda, provided NYSDHR with a sworn written statement supporting the allegations that DEFENDANT CONNORS made sexually harassing comments to Ms. Gruninger, PLAINTIFF and other female employees frequently. For example, but not limited to, Mr. Pineda witnessed DEFENDANT CONNORS: 1) state regarding Ms. Gruninger "she needs to put her saggy tits back in her shirt"; 2) lick his lips in a suggestive manner when PLAINTIFF would pass by; and 3) "make vile and disgusting jokes about women and minorities."

149.    On or about August 8, 2017, DEFENDANT CONNOR exited the bathroom at DEFENDANT TUTTNAUER USA, and walked into PLAINTIFF's office, which was directly across the hall with his penis exposed. This was witnessed by Ms. Gruninger. PLAINTIFF yelled at DEFENDANT CONNOR to leave her office.

150.    DEFENDANT CONNORS finally threatened PLAINTIFF in or about January 2018 that if PLAINTIFF continued to reject his unwanted sexual advances, DEFENDANT CONNORS would ensure PLAINTIFF was terminated. DEFENDANT CONNORS elaborated that termination would mean PLAINTIFF would not only lose her paycheck, but all of her benefits including family health insurance. DEFENDANT CONNORS knew that PLAINTIFF is diabetic, and that PLAINTIFF'S husband and son suffered from cancer, and that health insurance was paramount to the family's survival.

151.    On or about January 26, 2018, while in her office, DEFENDANT CONNORS aggressively, and sexually assaulted PLAINTIFF when DEFENDANT CONNORS rubbed his body against PLAINTIFF's, squeezed PLAINTIFF, and forcefully pinned PLAINTIFF down on her desk. PLAINTIFF told DEFENDANT CONNORS that he was hurting PLAINTIFF. PLAINTIFF

managed to escape and left the office immediately for home, just prior to the end of her work day. PLAINTIFF fled her place of work in fear of being sexually assaulted by DEFENDANT CONNORS. PLAINTIFF sustained marks on her forearms and the left side of her neck as a result of DEFENDANT CONNORS' attempted sexual assault.

152.    The DEFENDANT TUTTNAUER USA, through their agents and employees, discriminated against the Plaintiff in her employment based on Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by creating and maintaining a toxic and hostile work environment laced with abuse, acts of discrimination, acts of sexual harassment and assault, and threatening Plaintiff's employment while engaging in these discriminatory actions.

153.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer loss of income.  Plaintiff suffered loss of other employment benefits, and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to her reputation.

154.    As a result of the DEFENDANT TUTTNAUER USA  discriminatory acts through their agents and employees, Plaintiff is now suffering, and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e
## <u>WRONGFUL TERMINATION</u>

155.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 154 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

156.    As a result of PLAINTIFF's continued rejection of DEFENDANT CONNORS' sexual advances, DEFENDANTS terminated PLAINTIFF without warning, or reason, on or about February 1, 2018.    DEFENDANT CONNORS entered PLAINTIFF's office and informed PLAINTIFF she was terminated immediately.    This termination was discriminatory and retaliatory for PLAINTIFF refusing to agree to the sexual overtures of DEFENDANT CONNORS and hostile work environment about which she physically objected just days prior.

157.    PLAINTIFF was ultimately wrongfully terminated for refusing DEFENDANT CONNORS sexual advances "*quid pro quo*" and in retaliation for reporting pervasive race, religious and gender discrimination by senior executives at DEFENDANT TUTTNAUER USA.

158.    PLAINTIFF and her husband packed up PLAINTIFF's belongings from her office and left the premises.    DEFENDANTS BASILE and CONNOR, along with the former receptionist, Michaelina, were present at all times, and observed PLAINTIFF packing her belongings and departing.

159.    The DEFENDANT TUTTNAUER USA through their agents and employees, discriminated against the Plaintiff in her employment based on Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by creating and maintaining a toxic and hostile work environment laced with abuse, acts of discrimination, acts of sexual

harassment and assault and threatening PLAINTIFF's employment while engaging in these discriminatory actions.

160.    As a direct result of said acts, PLAINTIFF has suffered, and continues to suffer loss of income. PLAINTIFF suffered loss of other employment benefits, and continues to suffer distress, humiliation, embarrassment, great financial expense, and damage to her reputation.

161.    As a result of the DEFENDANT TUTTNAUER USA  discriminatory acts through their agents and employees, PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFF is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A FOURTH COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e
## RETALIATION

162.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through161 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

163.    In addition to retaliating against PLAINTIFF by terminating against her, DEFENDANT TUTTNAUER USA, engaged in further acts calculated to harm and damage PLAINTIFF for rebuffing the sexual advances, and raising her voice about the hostile, and toxic work environment created and fostered by DEFENDANT TUTTNAUER USA.

164.    Eight days after PLAINTIFF was terminated, DEFENDANT TUTTNAUER USA, through DEFENDANT CONNOR, accused PLAINTIFF of theft of a computer and deposit checks, which was utterly false.

165.    Based on information and belief, DEFENDANT CONNOR filed the police report eight days after PLAINTIFF's termination to dissuade PLAINTIFF from filing a complaint against DEFENDANT CONNOR for hostile work environment, discrimination, sexual harassment and/or for the sexual assault on PLAINTIFF that occurred on or about January 26, 2018.

166.    PLAINTIFF was never presented with any claims of wrong doing prior to being terminated, was not charged with a crime, nor even interviewed by the police in relation to DEFENDANTS TUTTNAUER USA and CONNORS' false police report.

167.    DEFENDANT TUTTNAUER USA was aware of PLAINTIFF's repeated complaints of hostile work environment regarding sexual harassment and discrimination by its senior executives and filed said police report to try intimidate and try and silence PLAINTIFF.

168.    The DEFENDANT TUTTNAUER USA through their agents and employees, retaliated against the PLAINTIFF in her employment based on Plaintiff's her opposing the acts of sex discrimination, sexual harassment, sexual assault and overt and hostile work environment to which PLAINTIFF was being subjected in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended in an attempt to mask, cover up and prevent PLAINTIFF from complaining about and furthering her complaints about the toxic and hostile work environment laced with abuse, acts of discrimination, acts of sexual harassment and assault and threatening PLAINTIFF's employment while engaging in these discriminatory actions.

169.    As a direct result of said acts, PLAINTIFF has suffered, and continues to suffer loss of income.  PLAINTIFF suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to her reputation.

170.    As a result of the DEFENDANT TUTTNAUER USA's discriminatory and retaliatory acts through their agents and employees, PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFF is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A FIFTH COUNT
### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e
### DENIAL OF EQUAL RIGHTS AND BENEFITS

171.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through170 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

172.    DEFENDANT TUTTNAUER USA, presented to NYSDHR that PLAINTIFF was terminated due to a redundancy in the work PLAINTIFF performed, as said duties were also performed by DEFENDANT CONNOR, a white male.

173.    Based on its investigation, NYSDHR discovered that PLAINTIFF, a female with over 26 years experience was terminated in favor of DEFENDANT CONNOR, a white male with less experience, having worked for DEFENDANT TUTTNAUER USA for less than four years. DEFENDANT CONNOR was paid more than PLAINTIFF in terms of salary and benefits.

174.    To add insult and further discrimination to injury, PLAINTIFF' s position was in fact filled by a younger white male, Yohan, whose salary and benefits far exceeded that of PLAINTIFF's while PLAINTIFF was employed with DEFENDANT TUTTNAUER USA.

175.    DEFENDANTS failed to provide PLAINTIFF with insurance coverage for the remainder of the month in which she was terminated along with the following month as was

DEFENDANT TUTTNAUER USA's policy and custom.

176.    As a direct result of said acts, PLAINTIFF has suffered and continues to suffer loss

of income. PLAINTIFF suffered loss of other employment benefits, and continues to suffer distress,

humiliation, embarrassment, great financial expense and damage to her reputation.

177.    As a direct result of said acts, PLAINTIFF has been deprived of her rights and

freedoms, mentally and physically harmed, to the extent of which PLAINTIFF suffered from her loss

of her employment. PLAINTIFF was subjected to abuse, ridicule, unsolicited physical touching,

sexual assault, defamation of character, unwanted sexual advances and comment, discrimination and

wrongful termination. PLAINTIFF has been subjected to humiliation, loss of dignity, loss of title/

status, disregard for her seniority, removal from her position, and suffered a diminished quality of

life. PLAINTIFF has incurred fees/damages, loss of pay, loss of benefits, and other damages/ injuries

due to the wrongful termination from her career and employment.

178.    As a result of the DEFENDANTs' discriminatory acts, PLAINTIFF is now suffering

and will continue to suffer irreparable injury and monetary damages, as well as damages for mental

anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing

in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs

and attorney's fees.

## AS AND FOR A SIXTH COUNT
## NYS HUMAN RIGHTS LAW, EXECUTIVE LAW ART. 15

179.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through

178 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

180.    The above discriminatory pattern and practice based on gender, sex,  hostile work

environment, and in retaliation for reporting discrimination based on race, religion, gender, and

sexual harassment by Defendants, their agents, and employees violates New York State law.

181.    DEFENDANT TUTTNAUER USA was on notice from at least March 2016, of the discrimination, sexual harassment, and hostile work environment perpetrated by DEFENDANT TUTTNAUER USA's CFO, DEFENDANT CONNOR, and participated in through emails, and failed to remedy these concerns by Senior Vice President, DEFENDANT BASILE.

182.    PLAINTIFF was ultimately wrongfully terminated for refusing DEFENDANT CONNORS sexual advances "*quid pro quo*" and in retaliation for reporting pervasive race, religious and gender discrimination by senior executives at DEFENDANT TUTTNAUER USA.

183.    PLAINTIFF was subjected to differential terms regarding DEFENDANT TUTTNAUER USA's failure to follow it's own policies and practices regarding providing continued health insurance for terminated employees for the month in which they are terminated through the next full month.  PLAINTIFF' s insurance was terminated immediately by DEFENDANTS.

184.    As a direct and proximate result of said acts, PLAINTIFF has been deprived of her rights and freedoms, mentally and physically harmed, to the extent of which PLAINTIFF suffered from the loss of her employment through a wrongful termination. PLAINTIFF has the a subject of abuse, sexual harassment, sexual assault, hostile work environment, ridicule, and discrimination. PLAINTIFF has been subjected to humiliation, loss of dignity, loss of title/status, disregard for her seniority, wrongful removal from her position, loss of health insurance , and suffered a diminished quality of life. PLAINTIFF has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/injuries due to the wrongful termination from her career and employment and as a result of the retaliatory SLAPP suit filed by DEFENDANTS.

185.    Because of PLAINTIFF's gender, sex, religion, and for reporting discrimination based on race, religion and gender, she has been subjected to different, disparate, and abusive mistreatment as detailed above, and has been treated differently than male individuals in that PLAINTIFF has been treated as stated herein because of her gender, sex, and religion, and for reporting and opposing discrimination based on gender, race, nationality, ethnicity and religion.

186.    As a result of DEFENDANT's acts, PLAINTIFF suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.    First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.    Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.    Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.    Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.    Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.    Sixth Cause of Action: in excess of five million ($5,000,00.00) dollars as well as punitive damages, costs and attorney's fees.

g.    Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

h.    A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.      Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.      An Order granting such other legal and equitable relief as the court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL

Dated:  Hempstead, New York
        March 30, 2021

                        LAW OFFICES OF
                        FREDERICK K. BREWINGTON

        By:

                        FREDERICK K. BREWINGTON
                        *Attorneys for Plaintiff*
                        556 Peninsula Boulevard
                        Hempstead, New York  11550
                        (516) 489-6959